UNITED STATES of America, Appellee,

v.

Edward Theodore MOORE, Appellant.

No. 89–1538.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 14, 1989.

Decided Feb. 5, 1990.

Lee T. Lawless, St. Louis, Mo., for appellant.

Richard L. Poehling, St. Louis, Mo., for appellee.

Before BOWMAN and BEAM, Circuit Judges, and HENLEY, Senior Circuit Judge.

BOWMAN, Circuit Judge.

Edward Theodore Moore was convicted by a jury of a federal firearms violation. He remained free on bond but failed to appear for sentencing. He subsequently was convicted by a jury for failure to appear. 18 U.S.C. § 3146(a)(1), (b) (1988). The District Court[1] sentenced Moore to thirty months in prison, to be served consecutively to his sentence on the weapons conviction. Moore, who is black, requests a remand to the District Court, arguing that the court erred in failing to find he had made a prima facie case that the government used its peremptory challenges in an unconstitutional manner to exclude members of Moore's race from the jury that heard the failure-to-appear case. We affirm.

In *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the Supreme Court articulated the steps neces-

1. The Honorable Stephen N. Limbaugh, United States District Judge for the Eastern District of Missouri.

sary to establish that the prosecution's use of its peremptory challenges violated the equal protection rights of the defendant. The defendant first must make a prima facie case of purposeful racial discrimination. If he is able to do so, the burden shifts to the government "to come forward with a neutral explanation" for excluding blacks from the jury. *Id.* at 97, 106 S.Ct. at 1723. "The trial court then will have the duty to determine if the defendant has established purposeful discrimination." *Id.* at 98, 106 S.Ct. at 1724. It is the District Court's finding of no prima facie case that Moore challenges in this appeal. He requests a remand for a hearing on the prosecutor's reasons for striking black veniremen from Moore's jury panel.

■ In a recent case, we acknowledged that this Court had yet to articulate the standard of review for a trial court's ruling on the *Batson* prima facie case issue. *United States v. Fuller,* 887 F.2d 144, 146 (8th Cir.1989). A careful reading of *Batson* now convinces us, however, that the issue should be reviewed as a finding of fact, entitling the trial judge's ruling to great deference on review and subjecting it to reversal only in the face of clear error. *See* Fed.R.Civ.P. 52(a). As we noted in another recent case, "The *Batson* decision placed great confidence in a trial judge's ability to identify a prima facie case of race discrimination." *United States v. Hughes,* 880 F.2d 101, 103 (8th Cir.1989).

As *Batson* itself makes clear, the proof of a prima facie case is necessarily fact-intensive.

> To establish such a case, the defendant first must show that he is a member of a cognizable racial group, and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits "those to discriminate who are of a mind to discriminate." Finally, the defendant must show that *these facts and any other relevant circumstances* raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race.

*Batson,* 476 U.S. at 96, 106 S.Ct. at 1723 (quoting *Avery v. Georgia,* 345 U.S. 559, 562, 73 S.Ct. 891, 892–93, 97 L.Ed. 1244 (1953)) (citations omitted) (emphasis added). Thus it is important that the defendant come forward with *facts,* not just numbers alone, when asking the district court to find a prima facie case. The Court expressed its "confidence that trial judges, experienced in supervising *voir dire,* will be able to decide if the circumstances concerning the prosecutor's use of peremptory challenges creates [sic] a prima facie case of discrimination against black jurors." *Id.* 476 U.S. at 97, 106 S.Ct. at 1723. The Court thereby acknowledged that the determination of whether or not a criminal defendant has made a prima facie showing under *Batson* is vested in the expertise of trial courts and thus accorded those courts broad discretion in making that determination.

The Supreme Court, because of differing jury selection procedures throughout the courts of this country, "decline[d] ... to formulate particular procedures to be followed upon a defendant's timely objection to a prosecutor's challenges." *Id.* at 99, 106 S.Ct. at 1724–25, *accord id.* at 99 n. 24, 106 S.Ct. at 1725 n. 24. That responsibility was left to the individual judge's discretion. The Court did, however, instruct the trial judge that he "should consider all relevant circumstances." *Id.* at 96–97, 106 S.Ct. at 1723. Besides looking for a "pattern" of strikes against black veniremen, the Supreme Court advised courts to look at the prosecutor's remarks both during voir dire and when exercising his peremptory challenges. *Id.* at 97, 106 S.Ct. at 1723. But as any trial attorney or judge well knows, there are other "relevant circumstances" that will not be evident from a reading of the record. Defense counsel, the prosecutor, and the trial judge ordinarily will have access, at the least, to basic information

about the venire.[2] Information such as a juror's age, residence, and employment—and its similarity or dissimilarity to the defendant's vital statistics—will not appear on the record but will be important to those responsible for the composition of the jury. In addition, those present are able to evaluate general demeanor; to observe attention span, alertness, and interest;[3] and to assess reactions indicating hostility or sympathy towards or fear of the parties. Information of this sort cannot be discerned from a transcript. Yet such things may be vitally important when counsel employ their best judgment in exercising their peremptory challenges. The trial judge, with his experience in voir dire, is in by far the best position to make the *Batson* prima facie case determination. And, because of his unique awareness of the totality of the circumstances surrounding the voir dire, that determination must be treated as a finding of fact entitled to great deference on review. *De novo* review of the record by this Court would be inappropriate because the cold record is simply not enough. Nevertheless, we would suggest that trial judges, when finding no prima facie case, make a record of their reasons with appropriate reference to the underlying facts, especially those that are not self-evident from the voir dire transcript, or to the absence of facts in support of a prima facie case. Such on-the-record reasoning will aid us considerably in our review of the prima facie case issue.[4]

■ We turn now to the facts of this case. Twenty-eight persons, seven of whom were black, made up the venire called for Moore's trial. Defendant used none of his peremptory strikes against blacks; the prosecutor used four of his six peremptory strikes against blacks, leaving three blacks on the jury of twelve. Moore moved the court for a mistrial alleging a *Batson* violation and made a record on his motion. Judge Limbaugh ruled that the defense had not shown enough to establish a prima facie case of purposeful racial discrimination. He made his decision on the basis of all the facts and circumstances, which, as far as the record is concerned, consisted of the number of blacks on the venire, the number of blacks struck by the government, and the fact that neither the government nor the defense had any verbal response during voir dire from three of the four blacks struck.[5] Giving the district judge the deference due him as the result of his presence during the jury selection process, his opportunity to observe that process and its participants from start to finish, and his experience in supervising such sessions, we find no clear error in his ruling that no prima facie showing was made. Moore thus cannot show that either his equal protection rights or his Sixth Amendment rights were violated by the

2. In the Eastern District of Missouri, at the time of this trial, that information included, *inter alia*, each person's age, residence, occupation, and similar information about spouse and children.

3. For example, in this case the government challenged one of the black veniremen for cause, pointing out that he had been observed dozing during voir dire. The challenge was denied, but Judge Limbaugh noted that both he and the clerk had noticed the venireman's drowsiness. Transcript at 1–54 to 1–55. Were it not for the challenge for cause, we would have no record of a very relevant characteristic of a potential juror, and yet those present during voir dire were quite conscious of it.

4. *Cf. United States v. Johnson*, 873 F.2d 1137, 1140 n. 3 (8th Cir.1989) ("Should such situations occur in the future, where the district court considers the issue to be close, conservation of judicial resources might well justify inquiry of

the government attorney as to the reasons for making a strike.").

5. Twenty-five percent of the members of the trial jury were black—the same proportion of blacks as on the venire. We recognize that it is the exclusion of blacks and not their inclusion (*i.e.*, the final number) that is vital to a prima facie case of discrimination. *See United States v. Battle*, 836 F.2d 1084, 1086 (8th Cir.1987) ("[W]e emphasize that under *Batson*, the striking of a single black juror for racial reasons violates the equal protection clause, even though other black jurors are seated, and even when there are valid reasons for the striking of some black jurors."). But we also can see that the prosecutor could have struck more blacks from the jury, had it been his intent to eliminate blacks insofar as his peremptory challenges enabled him to do so.

jury selection procedure in this case, and we therefore affirm his conviction.

As a final point in his brief, Moore suggests that this "Court should also be mindful of the continuing problem with regard to the elimination of black jurors in the Eastern District of Missouri." Brief for Appellant at 8. In support of this remark, Moore directs our attention to *United States v. Norton,* 780 F.2d 21, 23 n. 3 (8th Cir.1985). That footnote expresses this Court's concern about "the apparent practice of exclusion of blacks from juries in trials in the Eastern District of Missouri" and cites cases from 1971 to 1984. *Id. Norton* is now nearly five years old and was decided almost a year before *Batson.* Moore offers us no reason to believe that our admonition in *Norton* and the teachings of the Supreme Court in *Batson* have not been heeded by prosecutors throughout this Circuit.[6] Without something to show current exclusionary practices, we are inclined to agree with the Supreme Court:

> We have no reason to believe that prosecutors will not fulfill their duty to exercise their challenges only for legitimate purposes. Certainly, this Court may assume that trial judges, in supervising *voir dire* in light of our decision today, will be alert to identify a prima facie case of purposeful discrimination.

*Batson,* 476 U.S. at 99 n. 22, 106 S.Ct. at 1724 n. 22.

Moore's conviction is affirmed.

---

6. We note that this same prosecutor and court seated a jury without objection in a trial on this same cause that ended in a mistrial. Neither does counsel for Moore give us any indication of discriminatory jury selection in Moore's trial on the underlying federal firearms charge.