Todd JOHNSON, Plaintiff–Appellant,

v.

Arb CAMPBELL; Charles Gross; City of Newport Beach; Donald Strauss, Defendants–Appellees.

No. 94–55408.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 16, 1995.

Decided Aug. 13, 1996.

Stephen Yagman, Yagman & Yagman, Venice, California, for plaintiff-appellant.

John A. Daly, Chase, Rotchford, Drukker & Bogust, Los Angeles, California, for defendants-appellees.

Before FLETCHER, CANBY, and HAWKINS, Circuit Judges.

CANBY, Circuit Judge:

Plaintiff-appellant Todd Johnson brought a civil rights action under 42 U.S.C. § 1983, alleging that Campbell, a police officer, used excessive force against him during the course of his arrest. The jury returned a verdict for the defense. On appeal, Johnson contends that the district court erred by refusing to question a juror about his sexual orientation when Johnson made a *Batson* objection to the defense's peremptory challenge of the juror. *See Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). We need not decide the question whether a challenge based on sexual orientation falls within the rule of *Batson;* we assume for purposes of decision that it does. We nevertheless reject Johnson's appeal, because he did not offer facts or circumstances that created an inference of purposeful discrimination. The district court therefore did not err in declining to question the juror about his sexual orientation.

## I. BACKGROUND

During the *voir dire,* the judge asked the jurors about their past jury experiences. Two jurors had had recent jury experience in similar trials involving claims against police officers. The first juror stated that he had been on the jury in a trial involving "almost the same situation" the month before, and that the jury in that trial had found for the defendant. The judge then explained that he

had not wanted the juror to tell him what verdict the jury had reached.

The judge then questioned the second juror, the challenge to whom is the subject of this appeal. The second juror replied that he had been a juror two weeks earlier in a similar case involving a false arrest. The second juror said that the jury had been able to reach a verdict, but, as the judge instructed, he did not disclose what that verdict was.

The trial judge also questioned the jurors about their education, employment, and families. The entirety of the judge's exchange with the juror in issue was as follows:

JUROR: I'm a resident of West Hollywood. I've lived there for the past three years. I am single. I have no children. I'm a screen writer. Before that, I worked at a television production company, six years.

THE COURT: Do you have a present employer?

JUROR: I work free lance.

THE COURT: All right.

JUROR: I have a masters degree in English from UCLA.

After the judge finished his questioning, he gave both parties the opportunity to suggest additional questions. When neither side offered any, the judge proceeded with juror challenges. Neither party exercised any challenges for cause, and Johnson's attorney, Stephen Yagman, did not exercise any peremptory challenges. Campbell's attorney, John Daly, exercised one peremptory challenge to excuse the juror questioned second about his prior jury experience.

Immediately after the peremptory challenge, Yagman requested a *Batson* side bar conference. The judge initially denied the request. After Yagman insisted "[t]here is a reason for it, Your Honor," the judge allowed him to approach the bench. The following conversation ensued at side bar:

THE COURT: First of all, [the juror] did not appear to fit into any category –

MR. YAGMAN: He does to me.

THE COURT: What is that?

MR. YAGMAN: He is gay.

THE COURT: How do you know that?

MR. YAGMAN: I believe, that based on my observations, just as I would observe a man to be a man, and a woman to be a woman. I listened to his answers. I watched his mannerisms. I believe him to be gay.

THE COURT: How do you know what Mr. Daly—

MR. YAGMAN: I don't know what Mr. Daly believes.

THE COURT: Are you accusing, this gentleman excused him because he is gay?

MR. YAGMAN: It is not an accusation. I believe him to be gay. I believe we have a right to voir dire him on that, to find out if it is true or not. I believe there is sufficient evidence to demonstrate he is. I observe (ph) gays as a protected class under the Batson standard.

THE COURT: First, this gentleman does not fit into a category of persons protected by *Batson*. There is no way the Court can define whether or not he is gay. And I don't think it is appropriate to make a *Batson* challenge. This is a peremptory challenge, which is permissible.

MR. YAGMAN: I base this on the following; the way he is—his affect; the way he projects himself, both physically and verbally indicate to me that he is gay. The place where he lives is potential evidence of that. His marital status is potential evidence of that. What he has done for a living is potential evidence of that.

. . . .

I know we can't tell these things with certainty. I know it is common for people to point at people and say "these people are such and such." And you can't really know. The only way you can know is to inquire. Sexual orientation is an impermissible excuse for excusing a juror, and I believe the Court has a duty to make a record. . . .

The court denied Yagman's *Batson* objection without further questioning of the challenged juror. On appeal, Johnson contends that the district court erred by refusing to question the challenged juror about his homosexuality so that Johnson could pursue his *Batson* objection.

## II. ANALYSIS

■ We review for clear error a district court's findings regarding purposeful discrimination in the jury selection process, including a finding that a party has failed to establish a *prima facie* case of discrimination under *Batson*. *See United States v. Vasquez–Lopez*, 22 F.3d 900, 901–902 (9th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 239, 130 L.Ed.2d 162 (1994). We accord great deference to a trial court's determination regarding the establishment of a *prima facie* case because of the trial court's unique awareness of the totality of the circumstances, the factual nature of the determination, and the judge's ability to observe all of the parties. *See United States v. Moore*, 895 F.2d 484, 485–86 (8th Cir.1990).

*Batson* established that a prosecutor's exercise of peremptory challenges to exclude members of the defendant's racial group in a criminal trial violated both the defendant's and the excluded jurors' rights under the Equal Protection Clause. *Batson*, 476 U.S. at 87–89, 106 S.Ct. at 1718–19. The Supreme Court has extended *Batson* to prohibit all parties in either civil or criminal trials from challenging prospective jurors solely on account of their race or sex. *See J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, ——, ——, 114 S.Ct. 1419, 1421, 1430, 128 L.Ed.2d 89 (1994) (prohibiting sex-based peremptory challenges); *Georgia v. McCollum*, 505 U.S. 42, 59, 112 S.Ct. 2348, 2359, 120 L.Ed.2d 33 (1992) (applying *Batson* to peremptory challenges by criminal defendants); *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 629–631, 111 S.Ct. 2077, 2087–89, 114 L.Ed.2d 660 (1991) (applying *Batson* to parties in civil cases).

■ Johnson would have us take the next step and hold that a challenge based on sexual orientation is also subject to *Batson*, but he has not presented us with a record appropriate for such a venture. Even when we assume, without deciding, that sexual or-

ientation qualifies as a *Batson* classification, Johnson's appeal fails. Yagman, Johnson's attorney, had to establish a *prima facie* case of purposeful discrimination before Daly was required to respond with a neutral, non-discriminatory reason. *See Purkett v. Elem*, —— U.S. ——, —— – ——, 115 S.Ct. 1769, 1770–71, 131 L.Ed.2d 834 (1995) (per curiam). To establish the *prima facie* case, Yagman had to show that the circumstances surrounding the peremptory strike of the juror raised an inference of purposeful discrimination by Daly. *Vasquez–Lopez*, 22 F.3d at 901–02. Yagman failed. We can accept for purposes of argument that Yagman has shown that the juror is gay. That is only the first step. The totality of the circumstances, as reflected in the transcript of the *voir dire*, leads us to conclude that, even if the juror had been established to be gay, Yagman's showing was insufficient to raise an inference that the challenge was based on purposeful discrimination. As we have already related, Yagman made no attempt to show discriminatory motivation on the part of the opposing attorney. Nothing in the record suggested that sexual orientation of any of the parties was in issue, nor did Johnson claim that any form of discrimination motivated the alleged excessive force upon which his complaint was based.[1] Moreover, there was an obvious neutral reason for the challenge. Only two jurors had prior jury experience in trials involving allegations of excessive police force. The first one stated that his prior jury had found for the defense, so there was no reason for Campbell's attorney to challenge him because of his prior experience. The second juror, however, did not reveal the verdict his previous jury had rendered. He was thus the only potential juror with jury experience in a similar trial, whose conclusion in the previous case remained unknown to the defense. The presence of this obvious reason for the defense's peremptory challenge, along with the absence of any showing that the juror's sexual orientation was known to the defense or was the reason for the challenge,

---

1. We recognize that Johnson need not share the protected characteristic of the challenged juror to raise a *Batson* objection. *See Powers v. Ohio*, 499 U.S. 400, 402, 111 S.Ct. 1364, 1365, 113 L.Ed.2d 411 (1991). Our point in stating that no issue of sexual orientation was presented in the trial is simply to emphasize that there is no reason, in the absence of any other evidence of discriminatory motive, to assume that the defense challenged the juror in this case because of his sexual orientation.

is sufficient to convince us that Yagman did not establish his *prima facie* case under *Batson*. See *Capers v. Singletary*, 989 F.2d 442, 446–47 (11th Cir.1993) (reviewing court could consider neutral reasons for exercise of peremptory challenge that were apparent on the record of *voir dire* to determine whether *prima facie* case was established); *United States v. Dennis*, 804 F.2d 1208, 1210–11 & n. 22 (11th Cir.1986) (even if trial court did not make clear determination regarding the *prima facie* case, a remand was unnecessary because a finding of *Batson* violation by the trial court on that· record, which contained obvious reasons for the exercise of the challenges and an absence of circumstances suggesting discrimination, would constitute reversible error), *cert. denied*, 481 U.S. 1037, 107 S.Ct. 1973, 1974, 95 L.Ed.2d 814 (1987). We therefore agree with the district court that there was no reason to pursue the matter further.

### III. CONCLUSION

Because Johnson did not show any facts or circumstances to give rise to an inference of purposeful discrimination, the district court did not err in refusing to question the challenged juror about his sexual orientation, or to permit a *Batson* hearing.

**AFFIRMED.**