182 F.3d 677 (9th Cir. 1999)
 DARRYL TOLBERT, PETITIONER-APPELLANT,
v.
GLENDA PAGE, PAROLE OFFICER, INTERSTATE PAROLE UNIT, CALIFORNIA DEPARTMENT OF CORRECTIONS; JAMES NIELSEN, CHAIRMAN, CALIFORNIA BOARD OF PRISON TERMS; THOMAS GIAQUINTO, THOMAS BORDONARO, JOHN GILLIS, MANUEL ORTEGA, DEAN SHELTON, ARTHUR VAN
COURT AND ED WILLIAMS,[1] MEMBERS, CALIFORNIA BOARD OF PRISON TERMS; CAL TERHUNE,[2] DIRECTOR, CALIFORNIA DEPARTMENT OF CORRECTIONS; ATTORNEY GENERAL OF THE STATE OF CALIFORNIA, RESPONDENTS-APPELLEES.
 No. 97-55004
 U.S. Court of Appeals, Ninth Circuit
 Argued and Submitted February 18, 1999
Decided June 28, 1999
 
 Michael B. Dashjian (argued), Solvang, California, for the petitioner-appellant.
 Stephen M. Kaufman (argued), Deputy Attorney General, Los Angeles, California, for the respondents-appellees.
 Appeal from the United States District Court for the Central District of California George H. King, District Judge, Presiding D.C. No. CV-95-05666-GHK
 Before: Procter Hug, Jr., Chief Judge, and James R. Browning, Harry Pregerson, Alex Kozinski, Diarmuid F. O'Scannlain, Ferdinand F. Fernandez, Thomas G. Nelson, Michael Daly Hawkins, Susan P. Graber, M. Margaret McKeown, and Kim McLane Wardlaw, Circuit Judges.
 
 OPINION
 O'SCANNLAIN, Circuit Judge
 
 1
 We must decide the standard by which we review a trial court's determination of whether there was unconstitutional prosecutorial discrimination in exercising a peremptory challenge of a juror in a criminal case.
 
 I.
 
 2
 California state prisoner Darryl Tolbert appeals the district court's denial of his habeas petition challenging his California state court conviction for first-degree robbery. Tolbert contends his conviction should be set aside because the prosecution impermissibly used a peremptory challenge to strike a black man from the petit jury in violation of Batson v. Kentucky, 476 U.S. 79 (1986). At trial, defense counsel objected to the prosecution's peremptory challenge of a juror under People v. Wheeler, 22 Cal. 3d 258 (1978), the California equivalent of Batson. The state trial court Judge denied the defense motion, finding that Tolbert had failed to make a prima facie showing of discrimination. Tolbert's conviction was affirmed in the state appellate court and his petition for review was denied by the state supreme court.
 
 
 3
 Tolbert then filed a petition for writ of habeas corpus in federal district court, alleging a violation of his constitutional rights under Batson.[3] The district court dismissed his petition and Tolbert timely appealed.
 
 
 4
 A three-Judge panel of this court, to which the appeal was assigned, discovered an irreconcilable conflict in this circuit's case law regarding the standard of review for rulings on the prosecution's use of peremptory challenges. We took this case en banc to resolve the conflict.
 
 II.
 
 5
 In Swain v. Alabama, 380 U.S. 202, 203-04 (1965), the United States Supreme Court held that the purposeful exclusion of blacks from jury service violates the Equal Protection Clause. The Court sought to accommodate both the prosecutor's privilege of peremptorily challenging jurors and the newly promulgated constitutional prohibition against exclusion of jurors because of race. See id. at 219-24. Swain required the defendant to present a prima facie case that the peremptory challenge system was being used for a discriminatory purpose. See id. at 224. This requirement was a high hurdle for the defense, because the defendant had to show that the prosecutors had a practice of discriminatory use of peremptory challenges in "case after case." Id. at 223. In Swain, for example, even though the prosecutor struck six black jurors, the Court held that the evidence failed to show a prima facie case of discrimination. See id. at 224. The Court reasoned that "[t]he record is absolutely silent as to those instances in which the prosecution participated in striking Negroes, except for the indication that the prosecutor struck the Negroes in this case.... There is no evidence, however, of what the prosecution did or did not do on its own account in any cases other than the one at bar." Id. at 224-25. Thus, absent proof beyond the facts of a defendant's own case that the prosecutor was responsible for striking black jurors on account of race, a defendant could not maintain a Swain challenge.
 
 
 6
 In Batson, the Supreme Court sought to alleviate the defendant's "crippling burden of proof" under Swain, because the burden had rendered "prosecutors' peremptory challenges... largely immune from constitutional scrutiny." Batson, 476 U.S. at 92-93. Batson dramatically liberalized Swain's requirement that a defendant show that the prosecution pursued a practice of discriminatory use of peremptory challenges by reference to other cases. Under Batson, "a defendant may establish a prima facie case of purposeful discrimination in selection of the petit jury solely on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's trial." Id. at 96.
 
 
 7
 Batson promulgated a three-step test for evaluating the propriety of a peremptory challenge. First, the movant must make a prima facie showing that the prosecution has engaged in the discriminatory use of a peremptory challenge by demonstrating that the circumstances raise "an inference that the prosecutor used [the challenge] to exclude veniremen from the petit jury on account of their race."[4] Id. Second, if the trial court determines a prima facie case has been established, the burden shifts to the prosecution to articulate a race-neutral explanation for challenging the juror in question. See id. at 97. Third, if the prosecution provides such an explanation, the trial court must then rule whether the movant has carried his or her burden of proving the existence of purposeful discrimination. See id. at 98.[5]
 
 
 8
 How we should review a trial court's decision that an inference of discrimination has or has not been raised at the prima facie step is unsettled. Indeed, we have directly conflicting precedents within our circuit. In United States v. VasquezLopez, 22 F.3d 900, 901 (9th Cir. 1994), and Johnson v. Campbell, 92 F.3d 951, 953 (9th Cir. 1996), we held that we review for clear error, while in Turner v. Marshall, 63 F.3d 807, 814 n.4 (9th Cir. 1995), we reviewed the trial Judge's prima facie case determination de novo.[6]
 
 III.
 
 9
 Because it falls "somewhere between a pristine legal standard and a simple historical fact," whether a prima facie case determination is reviewed de novo or deferentially depends upon what are essentially practical considerations. See Miller v. Fenton, 474 U.S. 104, 114 (1985). This court has noted that, "in each case, the pivotal question is do the concerns of judicial administration favor the district court or do they favor the appellate court." United States v. McConney, 728 F.2d 1195, 1202 (9th Cir. 1984) (en banc); see also Miller, 474 U.S. at 114 ("[I]n those instances... in which the issue falls somewhere between a pristine legal standard and a simple historical fact, the fact/law distinction at times has turned on a determination that, as a matter of sound administration of Justice, one judicial actor is better positioned than another to decide the issue in question."); Koirala v. Thai Airways Int'l, Ltd., 126 F.3d 1205, 1210 (9th Cir. 1997) (holding that the existence of wilful misconduct under the Warsaw convention is a mixed question of fact and law and, "[a]s such, it may be subject either to clear error or de novo review, depending upon `the concerns of judicial administration.' " (citation omitted)). While "the concerns of judicial administration will generally favor the appellate court" and de novo review, particularly in cases implicating constitutional rights, McConney, 728 F.2d at 1202, "[t]here are... some types of mixed questions that are exceptions to this general predominance," id. at 1203. The McConney court explained that:
 
 
 10
 "If application of the rule of law to the facts requires an inquiry that is essentially factual--one that is founded on the application of the fact-finding tribunal's experience with the mainsprings of human conduct--the concerns of judicial administration will favor the district court, and the district court's determination should be classified as one of fact reviewable under the clearly erroneous standard. If, on the other hand, the question requires us to consider legal concepts in the mix of fact and law and to exercise judgment about the values that animate legal principles, then the concerns of judicial administration will favor the appellate court, and the question should be classified as one of law and reviewed de novo."
 
 
 11
 Id. at 1202 (internal quotation marks and citations omitted);[7] see also United States v. Marbella, 73 F.3d 1508, 1515 (9th Cir. 1996) ("`When a mixed question of law and fact is presented, the standard of review turns on whether factual matters or legal matters predominate.' " (citation omitted)). Thus, if the Batson prima facie analysis "is essentially a factual inquiry," it generally will be "better suited for district court examination." Koirala, 126 F.3d at 1210. This is so even though the Batson inquiry implicates a defendant's constitutional rights. See Miller, 474 U.S. at 113 ("[A]n issue does not lose its factual character merely because its resolution is dispositive of the ultimate constitutional question.").
 
 
 12
 At the Batson prima facie showing step, the concerns of judicial administration tip in favor of the trial court and, therefore, a deferential standard of review prevails. Our Conclusion is based on the language of Batson itself, which describes the prima facie analysis as a "factual inquiry," Batson, 476 U.S. at 95, and makes clear that the trial court is to be the primary adjudicator of that analysis: "We have confidence that trial Judges, experienced in supervising voir dire, will be able to decide if the circumstances concerning the prosecutor's use of peremptory challenges create[ ] a prima facie case of discrimination." Id. at 97 (emphasis added).
 
 
 13
 Our holding is also consistent with more recent teachings of the Supreme Court, which counsel in favor of applying a deferential standard of review to certain mixed questions. See Salve Regina College v. Russell, 499 U.S. 225, 233 (1991). Deferential review is appropriate either "when it appears that the district court is `better positioned' than the appellate court to decide the issue in question, " or when "probing appellate scrutiny will not contribute to the clarity of legal doctrine." Id. (citing Miller, 474 U.S. at 114); see also Thompson v. Keohane, 516 U.S. 99, 114 (1995); Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 403-05 (1990).[8]
 
 
 14
 With respect to the first Salve Regina factor, the trial court is better positioned to decide the Batson prima facie issue, which involves a " `factual inquiry' that `takes into account all the possible explanatory factors' in the particular case." Batson, 476 U.S. at 95 (quoting Alexander v. Louisiana, 405 U.S. 625, 630 (1972)).[9] Whether or not "all the relevant circumstances" "raise an inference" of discrimination will depend on factors such as the attitude and behavior of the challenging attorney and the prospective jurors manifested during voir dire. As a purely practical matter, the trial Judge's unique perspective of voir dire enables the Judge to have first-hand knowledge and observation of critical events. See Bergodere, 40 F.3d at 517. The trial Judge personally witnesses the totality of circumstances that comprises the "factual inquiry," including the jurors' demeanor and tone of voice as they answer questions and counsel's demeanor and tone of voice in posing the questions. See Reynolds v. United States, 98 U.S. 145, 156-57 (1879) ("[T]he manner of the juror while testifying is oftentimes more indicative of the real character of his opinion than his words. That is seen below, but cannot always be spread upon the record."). The trial Judge is able to observe a juror's attention span, alertness, and interest in the proceedings and thus will have a sense of whether the prosecutor's challenge can be readily explained by a legitimate reason. See United States v. Moore, 895 F.2d 484, 486 (8th Cir. 1990); Brewer v. Marshall, 119 F.3d 993, 1004 (1st Cir. 1997) ("The trial Judge is thus likely to have a much better sense than any appellate panel of whether a particular challenge can readily be explained by some reason other than race or gender -- for example, other characteristics of the juror, the juror's demeanor, or something in the juror's background suggesting sympathy for one side or the other."), cert. denied, 118 S. Ct. 1172 (1998). The trial court will also have access to other information about the venire pool that often does not show up in the record on appeal --such as juror age, residence and employment.[10] See Moore, 895 F.2d at 485-86. In addition, the trial court is "experienced in supervising voir dire." Batson, 476 U.S. at 97; see also Moore, 895 F.2d at 486.
 
 
 15
 The appellate court, on the other hand, must Judge the existence of a prima facie case from a cold record. An appellate court can read a transcript of the voir dire, but it is not privy to the unspoken atmosphere of the trial court -- the nuance, demeanor, body language, expression and gestures of the various players. See Bergodere, 40 F.3d at 517. The Supreme Court specifically recognized the importance of a trial court's "first-person vantage" in voir dire in Thompson, 516 U.S. at 114. Although a Batson challenge involves the application of a legal standard, the prima facie inquiry is so fact-intensive and so dependent on first-hand observations made in open court that the trial court is better positioned to decide the issue; thus, the concerns of judicial administration tip in favor of the trial court. See Bergodere, 40 F.3d at 517 ("[T]he trial Judge, who sees and hears both the prospective juror and the opposing attorneys in action, is in the best position to pass judgment on counsel's motives.").
 
 
 16
 The second factor recognized in Salve Regina -- the level of law-clarifying value in appellate review -- also weighs in favor of deference. As we have noted, the Batson prima facie analysis is "a `factual inquiry' that `takes into account all the possible explanatory factors' in the particular case." Batson, 476 U.S. at 95 (quoting Alexander, 405 U.S. at 630). As such, it is heavily reliant on " `multifarious, fleeting, special, narrow facts that utterly resist generalization.' " Pierce v. Underwood, 487 U.S. 552, 561-62 (1988) (quoting the late Professor Maurice Rosenberg, Judicial Discretion of the Trial Court, Viewed from Above, 22 Syracuse L. Rev. 635, 662 (1971)). Every Batson inquiry will have nuances and differences that essentially dictate the results of the case. The inquiry is, therefore, an "individual-specific decision,... unlikely to have precedential value." Thompson, 516 U.S. at 114. The numerous factors that go into a court's assessment of whether the circumstances have raised an inference of discrimination -- juror A appeared distracted, prosecutor B appeared more suspicious of black jurors than white jurors, juror C seemed too assertive, and so on -- cannot be generalized to add definition to the existing law. See Cooter & Gell, 496 U.S. at 405 (" `Fact-bound resolutions cannot be made uniform through appellate review, de novo or otherwise.' " (citation omitted)). Because appellate review is unlikely to add consistency, certainty and guidance to Batson prima facie case law, the concerns of judicial administration remain tipped in favor of the trial court and deferential review.
 
 
 17
 In holding that the appellate court should review a trial court's Batson prima facie determination deferentially, we join the majority of our sister circuits. See, e.g., Brewer, 119 F.3d at 1004 ("That same clear error standard applies to rulings on whether the defendant has made a Batson prima facie case."); United States v. Stewart, 65 F.3d 918, 923 (11th Cir. 1995) ("When we review the resolution of a Batson challenge, we give great deference to the district court's finding as to the existence of a prima facie case."); Bergodere, 40 F.3d at 516 ("A careful reading of Batson convinces us that, although this determination can be characterized as a mixed question of law and fact, it is fact-sensitive, and, therefore, should be reviewed under the familiar clear-error standard."); United States v. Branch, 989 F.2d 752, 755 (5th Cir. 1993) (stating that the trial court's finding that "appellants did not make a prima facie case of discrimination under Batson... is reviewed for clear error"); United States v. Casper, 956 F.2d 416, 418 (3d Cir. 1992) ("A district court's determination that a defendant has failed to make a prima facie showing of racial discrimination in violation of the Equal Protection Clause will be reversed only if that determination is clearly erroneous."); Moore, 895 F.2d at 485 ("[T]he [Batson prima facie] issue should be reviewed as a finding of fact, entitling the trial Judge's ruling to great deference on review and subjecting it to reversal only in the face of clear error."); United States v. Grandison, 885 F.2d 143,146 (4th Cir. 1989) ("The trial Judge plays a pivotal role in determining a prima facie case.... Such findings are entitled to great deference, and will not be disturbed by this court unless clearly erroneous. " (internal quotation marks and citations omitted)).[11]
 
 
 18
 Although many of these cases involve direct review of trial court Batson prima facie determinations, our review on habeas should certainly be no less deferential. See Wainwright v. Witt, 469 U.S. 412, 428 (1985) ("[D]eterminations of demeanor and credibility... were entitled to deference even on direct review; `[t]he respect paid such findings in a habeas proceeding certainly should be no less.' " (quoting Patton v. Yount, 467 U.S. 1025, 1038 (1984))). In fact, because the Batson prima facie determination is so factually based, it would be proper to apply the presumption of correctness allotted to factual issues by pre-AEDPA habeas law. See 28 U.S.C. S 2254(d) (1995) ("[A] determination after a hearing on the merits of a factual issue, made by a State court... evidenced by a written finding... shall be presumed to be correct."); see also Thompson, 516 U.S. at 111 ("[T]he Court has classified as `factual issues' within S 2254(d)'s compass questions extending beyond the determination of`what happened'... issues [which] encompass more than `basic, primary, or historical facts,' [but] their resolution depends heavily on the trial court's appraisal of witness credibility and demeanor.").
 
 
 19
 Indeed, our Conclusion is also consistent with the interpretation of Batson/Wheeler prima facie determinations under California law. See People v. Howard, 1 Cal. 4th 1132, 1155 (1992) ("Because Wheeler motions call upon trial Judges' personal observations, we view their rulings with `considerable deference' on appeal."). In fact, on direct appeal in this case, the California appellate court applied this deferential standard. See People v. Tolbert, No. B073260, p.9 (Cal. App. Nov. 22, 1994) (unpublished Disposition) ("We must give considerable deference to the findings of the trial court under the circumstances.").
 
 IV.
 
 20
 A trial court's determination of whether a prima facie case of discrimination under Batson has been established is to be reviewed deferentially, on direct review for clear error, or in the habeas context, by application of the statutory presumption of correctness. To the extent that Turner v. Marshall, 63 F.3d 807 (9th Cir. 1995), conflicts with this holding, it is overruled.
 
 
 21
 We return control of the case to the original three-Judge merits panel to review, consistent with the presumption of correctness under section 2254(d), the state trial court's determination that Darryl Tolbert failed to establish a prima facie case of discrimination.
 
 
 22
 REMANDED TO MERITS JUDGES FOR FURTHER PROCEEDINGS.
 
 
 
 NOTES:
 
 
 [1]
 Appellant's Motion for Substitution of Public Officials is granted. Glenda Page, James Nielsen, Thomas Giaquinto, Thomas Bordonaro, John Gillis, Manuel Ortega, Dean Shelton, Arthur Van Court and Ed Williams are substituted for William Duncan.
 
 
 [2]
 Cal Terhune is substituted for James Gomez, in accordance with Fed. R. App. P. 43(c).
 
 
 [3]
 Because Tolbert filed his habeas petition in the federal district court in August 1995, the Antiterrorism and Effective Death Penalty Act ("AEDPA") does not apply. See Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir.) (en banc), cert. denied, 118 S. Ct. 586 (1997).
 
 
 [4]
 Batson required the defendant to establish three elements in support of the prima facie case: (1) that the defendant is a member of a cognizable racial group; (2) that the prosecution "has exercised peremptory challenges to remove from the venire members of the defendant's race"; and (3) "that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race." Batson, 476 U.S. at 96. In Powers v. Ohio, 499 U.S. 400, 402 (1991), the Court further liberalized Batson and abolished the requirement that the defendant and the stricken juror share the same race. See United States v. Hill, 146 F.3d 337, 340 (6th Cir. 1998) ("The Court has subsequently modified the requirements of a prima facie Batson case to allow defendants to challenge the prosecution's allegedly race-based strikes of potential jurors even where the defendant and the stricken juror are of different races."). Subsequently, the Court further extended Batson to hold that a challenge may be brought for gender-based discrimination in the use of peremptories. See J.E.B. v. Alabama ex rel. T.B., 511 U.S. 127 (1994).
 
 
 [5]
 The standards of review for rulings on certain aspects of the Batson analysis are settled in this circuit. "Whether the justification offered by a prosecutor is an adequate race-neutral explanation is a question of law" reviewed de novo. United States v. Bishop, 959 F.2d 820, 821 n.1 (9th Cir. 1992); see also Hernandez v. New York, 500 U.S. 352, 359 (1991) ("In evaluating the race neutrality of an attorney's explanation, a court must determine whether, assuming the proffered reasons for the peremptory challenges are true, the challenges violate the Equal Protection Clause as a matter of law."). Whether the defendant has satisfied the ultimate burden of proving purposeful discrimination is, of course, a question of fact reviewed for clear error. See Batson, 476 U.S. at 98 n.21; Hernandez, 500 U.S. at 364-65; Johnson v. Campbell, 92 F.3d 951, 953 (9th Cir. 1996). It is also settled that whether the challenged juror is a member of a protected class for Batson purposes is a question of law reviewed de novo. See United States v. De Gross, 960 F.2d 1433, 1436 (9th Cir. 1992) (en banc) ("Whether equal protection principles prohibit a party from peremptorily striking venirepersons on the basis of gender is a question of law that we review de novo."). We are not invited to revisit these holdings in the pending case.
 
 
 [6]
 The prima facie inquiry involves a mixed question of law and fact, because the court must determine whether the facts are sufficient to meet the requirements of the legal rule and, therefore, to proceed to the ensuing steps of the Batson analysis. See Pullman-Standard v. Swint, 456 U.S. 273, 289 n.19 (1982). As this court explained in In re Bammer, 131 F.3d 788, 792 (9th Cir. 1997) (en banc), "[a] mixed question of law and fact occurs when the historical facts are established; the rule of law is undisputed...; and the issue is whether the facts satisfy the legal rule." In a Batson inquiry, the relevant facts are established because they all occur in the courtroom in front of the trial court Judge; the rule of law has been established by the Supreme Court, i.e., in order to establish a prima facie case of discriminatory use of peremptory challenges, the defendant must show an inference of discrimination. The trial Judge is thus left to evaluate whether or not the facts satisfy the legal rule. See Mahaffey v. Page, 162 F.3d 481, 484 (7th Cir. 1998) ("[T]he preliminary question of whether a prima facie case has been shown presents a mixed question of law and fact."), petition for cert. filed, 67 USLW 3588 (Mar. 15, 1999); United States v. Bergodere, 40 F.3d 512, 516 (1st Cir. 1994) ("A careful reading of Batson convinces us that... this determination can be characterized as a mixed question of law and fact.").
 
 
 [7]
 The First Circuit has described a similar evaluation of the standard of review for mixed questions in terms of "a degree-of-deference continuum." In re Extradition of Howard, 996 F.2d 1320, 1327 (1st Cir. 1993). In Howard, the court explained that"[t]he standard of review applicable to mixed questions usually depends upon where they fall along the degree-of-deference continuum: the more fact-dominated the question, the more likely it is that the trier's resolution of it will be accepted unless shown to be clearly erroneous." Id. at 1328.
 
 
 [8]
 Applying these general provisions, the Supreme Court has held that trial court rulings on probable cause and reasonable suspicion should be reviewed de novo, see Ornelas v. United States, 517 U.S. 690, 699 (1996), that the voluntariness of a confession should be reviewed de novo, see Miller, 474 U.S. at 451-53, and that an "in custody" determination for Miranda purposes should be reviewed de novo, see Thompson, 516 U.S. at 112. On the other hand, the Court has held that the following trial court determinations should be reviewed deferentially, as findings of fact: juror impartiality, see Patton v. Yount, 467 U.S. 1025, 1028 (1984); capital sentencing juror impartiality, see Wainwright v. Witt, 469 U.S. 412, 429 (1985); a defendant's competency to stand trial, see Maggio v. Fulford, 462 U.S. 111, 117 (1983) (per curiam); a donor's intent in giving a gift for tax purposes, see Commissioner v. Duberstein, 363 U.S. 278 (1960); a defendant's subjective intent to discriminate under Title VII, see Pullman-Standard, 456 U.S. at 289; imposition of Rule 11 sanctions, see Cooter & Gell, 496 U.S. at 405; and a prosecutor's intent in provoking a defendant to move for a mistrial, see Oregon v. Kennedy, 456 U.S. 667, 677 n.7 (1982).
 
 
 [9]
 The Supreme Court gave little guidance on what facts might constitute a prima facie case. The Court did, however, give two "illustrative" examples: (1) "a `pattern' of strikes against black jurors included in the particular venire might give rise to an inference of discrimination"; and (2) "the prosecutor's questions and statements during voir dire examination and in exercising his challenges may support or refute an inference of discriminatory purpose." Batson, 476 U.S. at 97.
 
 
 [10]
 The Dissent argues that, because Batson looks to Title VII cases for guidance on the burden shifting procedure of the peremptory challenge inquiry, Title VII case law should govern our standard of review. We do not find this argument persuasive because of the vast difference between the Title VII and Batson prima facie inquiries. The four elements required to make out a Title VII prima facie case, as set out in footnote 2 of the Dissent, are all historical facts that show up in the record and can readily be evaluated on appeal. The appellate court is as well situated to scrutinize whether the factors established below were sufficient to make a prima facie case of a Title VII evaluation as is the trial court. As outlined previously, however, the Batson prima facie inquiry involves a trial court's evaluation of facts that play out in court, in front of the trial Judge. These facts will often not appear in the record and, thus, with incomplete information, the appellate court is ill-equipped to scrutinize whether the district court's prima facie determination was correct.
 
 
 [11]
 Curiously, the Seventh Circuit has recently held that a Batson prima facie case should be reviewed de novo. See Mahaffey, 162 F.3d at 484 ("[T]he preliminary question of whether a prima facie case has been shown presents a mixed question of law and fact which the appellate courts should review de novo." (internal citations omitted)). The court likened the prima facie determination to the probable cause determination discussed in Ornelas v. United States, 517 U.S. 690 (1996), in which the Supreme Court held that a probable cause determination should be reviewed de novo to allow for a measure of consistency, certainty and, therefore, guidance in the law. We disagree with the Seventh Circuit's Conclusion that the Batson prima facie determination is like the probable cause determination. In evaluating probable cause, the trial court must consider "the events which occurred leading up to the stop or search" and must then evaluate whether those facts amount to probable cause. Id. at 696. Thus, like the Title VII inquiry and unlike the Batson inquiry, the trial court will be judging facts described to the Judge and not facts that play out in front of the Judge.
 McKEOWN, Circuit Judge, with whom Circuit Judges PREGERSON and HAWKINS join, Dissenting:
 This case involves an important constitutional right -- freedom from discrimination in jury selection. Because Supreme Court and circuit precedent support de novo review of the prima facie prong of a challenge to secure that right, I respectfully Dissent.
 Juries have long been a cornerstone of our democratic system. See Powers v. Ohio, 499 U.S. 400, 406-07 (1991); Strauder v. West Virginia, 100 U.S. 303, 308 (1880). Aside from voting, jury service affords "ordinary citizens" the "most significant opportunity to participate in the democratic process." Powers, 499 U.S. at 407. Invidious discrimination in the selection of jurors denies citizens this important role, " `casts doubt on the integrity of the judicial process'..., and places the fairness of a criminal proceeding in doubt." Id. at 411 (citation omitted). As Batson teaches, the Constitution "forbid[s] discrimination on account of race in selection of the petit jury" "because it denies [a defendant ] the protection that a trial by jury is intended to secure." Batson v. Kentucky, 476 U.S. 79, 86, 88 (1986).
 Given the importance of this constitutional right, the standard of review governing an equal protection challenge to the exercise of peremptory strikes is a significant issue. In choosing to review for clear error a trial court's determination that a criminal defendant failed to establish a prima facie case under Batson, the majority puts the proverbial cart before the horse. We are not concerned here with a trial court's ultimate finding as to intentional discrimination in the jury selection process, which clearly would be entitled to deference under Hernandez v. New York, 500 U.S. 352, 364-65 (1991). Rather, we deal with the threshold question whether the defendant has raised an inference of discrimination sufficient to shift the burden to the prosecutor to articulate a neutral explanation for the peremptory strike. By transforming this threshold question into an intense "factual inquiry," and thereby merging the first and third prongs of the Batson standard, the majority has, as a practical matter, insulated from review a trial court's decision to reject a Batson challenge.
 Instead, I believe that a prima facie Batson challenge should be reviewed under a two-tier standard: while giving deference to the trial court's factual findings concerning the elements of the prima facie case, we should review de novo whether the challenging party has raised a sufficient inference of discrimination to shift the burden of production. This dual level standard of review at the prima facie stage is consistent with our jurisprudence regarding the similar burden-shifting scheme for claims under Title VII of the Civil Rights Act of 1964 and with the Supreme Court's recent holdings in other analogous contexts.
 The majority's thoughtful Discussion is less than complete in at least three respects: (1) it fails to acknowledge adequately the parallels between the Batson and Title VII standards; (2) it fails to distinguish sufficiently between the burden of production and the ultimate burden of persuasion; and (3) it fails to recognize the consistent theme in the Supreme Court's treatment of habeas review standards. These issues are critical to an analysis of the proper standard of review concerning the Batson prima facie showing.
 I. Title VII Standards Are Instructive
 In Batson, the Supreme Court made clear its intent that Title VII "burden of proof rules" and review standards apply to Batson challenges. 476 U.S. at 94 n.18, 98 n.21. With respect to Title VII, we have held that a determination whether the plaintiff established a primafacie case is reviewed de novo. See Gay v. Waiters' & Dairy Lunchmen's Union, Local No. 30, 694 F.2d 531, 540 (9th Cir. 1982). Now that we are confronted with a case involving a constitutional right, the standard of scrutiny should be nothing less.
 Batson outlines a three-part burden-shifting scheme for establishing purposeful discrimination in the exercise of peremptory challenges. Our focus here is on the first prong -establishing a prima facie case. To satisfy this threshold inquiry, a defendant must "raise[ ] the necessary inference of purposeful discrimination."[1] 476 U.S. at 96. This minimal burden of production, which simply shifts the burden to the prosecutor to provide a neutral explanation, must be contrasted with the defendant's ultimate burden of persuasion to establish purposeful discrimination. Although the Supreme Court has not announced a standard of review for the Batson prima facie case, the clearest signal can be found in its unambiguous reference in this context to Title VII:
 "Our decisions concerning 'disparate treatment' under Title VII of the Civil Rights Act of 1964 have explained the operation of prima facie burden of proof rules. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); United States Postal Service Board of Governors v. Aikens, 460 U.S. 711, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983)."
 Batson, 476 U.S. at 94 n.18, 106 S.Ct. 1712.
 Following the Supreme Court's lead, we should look to our precedent involving the standard of review applicable to the prima facie test under Title VII.[2] In Gay, we held that the trial court's factual findings supporting the prima facie showing are reviewed only for clear error, but further explained that the ultimate determination whether a prima facie case has been established is a legal question reviewed de novo:
 "[T]he court's determination whether the facts so proved were sufficient to establish an inference of discrimination, in other words whether the plaintiff's proof established a prima facie case thus shifting the burden of production to the defendant, is a legal Conclusion freely reviewable on appeal."
 694 F.2d at 540 (emphasis added) (acknowledging inconsistencies in prior Ninth Circuit authority). The similarities between the burden-shifting approaches under Batson and Title VII, and the constitutional nature of the Batson inquiry, provide strong support for de novo review of a prima facie showing under Batson.
 In support of its Conclusion that "the concerns of judicial administration" tip in favor of the clear error standard, the majority quotes a single sentence from Batson: "We have confidence that trial Judges, experienced in supervising voir dire, will be able to decide if the circumstances concerning the prosecutor's use of peremptory challenges create[ ] a prima facie case of discrimination." 476 U.S. at 97. I do not believe this sentence informs our opinion because the sentence must be read in context and because the sentence and surrounding text make no reference to the standard of review for a Batson challenge.
 Just before the referenced sentence appears in the opinion, the Court, having outlined the elements of a prima facie challenge, provides "illustrative" examples to assist trial courts in assessing whether the defendant has made the requisite showing. The Court specifically states that "a `pattern' of strikes against black jurors included in the particular venire might give rise to an inference of discrimination." Id. Then, indicating its reluctance to establish any bright-line rules, the Court offers the quoted sentence. Read in context, this sentence merely acknowledges the reality of the trial court's role and evidences the Court's reluctance to impose evaluative standards that might prove too rigid or inflexible.
 More importantly, this sentence neither addresses nor appears in the context of a Discussion concerning the standard for reviewing the prima facie determination. Rather, with respect to review standards, the Court's only references in Batson are to its Title VII jurisprudence, as discussed above. See id. at 94 n.18; see also id. at 98 & n.21 ("The trial court then will have the duty to determine if the defendant has established purposeful discrimination. In a recent Title VII sex discrimination case, we stated that a `finding of intentional discrimination is a finding of fact' entitled to appropriate deference by a reviewing court."). Thus, the sentence at issue does not provide any guidance concerning the standard of review applicable to the prima facie determination, and the majority's reliance on it is misplaced.
 II. The Burdens of Production and Persuasion are Distinct
 The majority offers a careful review of the standards applicable to mixed questions of law and fact, acknowledging, however, that this approach provides no clear-cut answer. Indeed, our holding in Gay casts doubt on the appropriateness of the majority's reliance on such labeling. In Gay, we recognized that the trial court might make factual findings, but characterized as "legal" the Conclusion whether to shift the burden of production. In addition, the majority's approach of simply labeling the Batson prima facie inquiry a mixed issue of law and fact only begs the question and blurs the distinction between shifting the burden of production and satisfying the burden of persuasion, i.e., deciding the ultimate issue of discrimination. As Gay recognized, raising an inference of discrimination sufficient to require the other side to articulate a neutral explanation cannot be equated with the ultimate factual finding of purposeful discrimination.
 Unlike the majority, I do not find Salve Regina College v. Russell, 499 U.S. 225 (1991), particularly instructive. Salve Regina involved the issue whether a district court's interpretation of state law is entitled to deference on appeal. See id. at 226. The Court concluded that appellate courts are more "structurally suited" to determine legal issues and that the appropriate standard of review is de novo. See id. at 231-32. Although the Court referred in passing to a district court's potentially better position to evaluate mixed questions of law and fact, the Court was not in that case confronted with a constitutional right or the complexities associated with the shifting of burdens between parties.
 Moreover, United States v. McConney, 728 F.2d 1195 (9th Cir. 1984) (en banc), on which the majority relies in its labeling approach, actually supports de novo review. In McConney, we observed that de novo review is favored "when the mixed question implicates constitutional rights." Id. at 1203. Not only does the Batson prima facie challenge involve constitutional concerns, it also presents the sort of situation that McConney recognized as calling for de novo review. Taken together, the three elements of the Batson prima facie case "require[ ] us to consider legal concepts in the mix of fact and law and to exercise judgment about the values that animate legal principles." Id. at 1202. Hence, "the concerns of judicial administration... favor the appellate court, and the question should be classified as one of law and reviewed de novo." Id.
 Seeking a solution through labels is not the answer. Instead, I believe that a careful study of Batson and Hernandez supports de novo review of the prima facie determination. In Batson, the Court's purpose was to remove the "crippling burden of proof" placed on defendants by lower courts' interpretation of the decision in Swain v. Alabama, 380 U.S. 202 (1965). See Batson, 476 U.S. at 92. The Court rejected the then prevailing evidentiary requirement that the defendant show a pattern of striking African-Americans from the jury in a number of past cases. See id. at 92-93. Instead, the Court held that the defendant's burden is specific to the case at hand. See id. at 95-96.
 In light of its concern that the evidentiary standards of the day had rendered "prosecutors' peremptory challenges... largely immune from constitutional scrutiny," id. at 92-93, the Court could not have intended in Batson to institute in their place an equally onerous evidentiary burden. Thus, I do not believe, as the majority suggests, that the Court envisioned that the prima facie stage is primarily a "factual inquiry." Rather, this type of intense "factual inquiry " is reserved for the final stage, when the trial court has "the duty to determine if the defendant has established purposeful discrimination." Id. at 98.
 By treating the threshold determination as a primarily factual one, the majority ignores the very important second prong of the Batson inquiry. If the circumstances raise an inference that the intent in striking venire members was discriminatory, Batson still requires that the prosecutor articulate for the record the reasons for the challenge. The trial Judge's guess or speculation as to the prosecutor's reasons should not be used as a substitute for the actual motive, and the requirement that the prosecutor state a neutral explanation should not be circumvented by collapsing the prima facie and final prongs of Batson into a single inquiry.
 In concluding that the trial court's ruling on the ultimate question of intentional discrimination renders moot the pre liminary issue whether the defendant made a prima facie showing, and that an appellate court's review on such record is only for clear error, the Court in Hernandez confirmed the distinction between the prima facie and final prongs of the Batson inquiry. See Hernandez, 500 U.S. at 359, 364-69 (plurality); id. at 372 (O'Connor, J., Concurring). As explained in Hernandez:
 "In the typical peremptory challenge inquiry, the decisive question will be whether counsel's race-neutral explanation for a peremptory challenge should be believed. There will seldom be much evidence bearing on that issue, and the best evidence often will be the demeanor of the attorney who exercises the challenge.... [E]valuation of the prosecutor's state of mind based on demeanor and credibility lies 'peculiarly within a trial Judge's province.'"
 Id. at 365, 111 S.Ct. 1859. In so characterizing the Batson analysis, the Court made clear that the trial court's "factual inquiry" and weighing of the prosecutor's credibility should occur after, not before, the prosecutor has offered a neutral explanation. See also Purkett v. Elem, 514 U.S. 765, 768-69 (1995) (distinguishing between impermissibly discounting the prosecutor's reasons as "silly or superstitious" at stage two of the Batson inquiry and determining at stage three whether the defendant has carried the burden of proving purposeful discrimination in light of the stated reasons, which the trial court may choose to disbelieve).
 III. Supreme Court Guidance in Other Contexts Supports De Novo Review
 As the Seventh Circuit recently observed, the Supreme Court's decision in Ornelas v. United States, 517 U.S. 690 (1996), "points in the direction of de novo review." Mahaffey v. Page, 162 F.3d 481, 484 (7th Cir. 1998), cert. denied, 119 S.Ct. 1786, 143 L.Ed.2d 814(1999). In Ornelas, the Court held that, in the context of investigatory stops and warrantless searches, determinations of reasonable suspicion and probable cause are to be reviewed de novo on appeal. 517 U.S. at 699. The majority attempts to distinguish Ornelas, but a probable cause determination is not as different from the prima facie Batson inquiry as the majority indicates. Just as the trial Judge in a Batson inquiry must look to the "facts and any other relevant circumstances," the trial Judge evaluating probable cause must determine the facts and circumstances surrounding the search, assess the credibility of the police officer, and determine whether the inferences drawn by the officer were reasonable, before reaching the ultimate legal Conclusion. Indeed, these facts often do play out in front of the trial Judge just as they do in the Batson context. As the Court in Ornelas reminds us, "[a]n appeals court should give due weight to a trial court's finding that the officer was credible and the inference was reasonable." Id. at 700. Despite these credibility assessments, which are wholly analogous to those under Batson, the Court opted in Ornelas for de novo review as to whether the facts gave rise to reasonable suspicion or probable cause.
 Ornelas is also consistent with the two-level review adopted in Gay. Although the Court in Ornelas adopted de novo review as to the ultimate determination of reasonable suspicion or probable cause, it took pains to emphasize the deference to be given the trial court's underlying factual findings:
 "[A] reviewing court should take care both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident Judges and local law enforcement officers."
 Id. at 699, 116 S.Ct. 1657. Likewise, in Miller v. Fenton, 474 U.S. 104 (1985), the Court recognized the appropriateness of the two-tier approach:
 "To be sure, subsidiary factual questions, such as whether a drug has the properties of a truth serum... or whether in fact the police engaged in the intimidation tactics alleged by the defendant,... are entitled to the S 2254(d) presumption.... But, as we now reaffirm, the ultimate question whether, under the totality of the circumstances, the challenged confession was obtained in a manner compatible with the requirements of the Constitution is a matter for independent federal determination."
 Id. at 112, 106 S.Ct. 445 (citations omitted). Thus, the two-level review that I propose comports with the Supreme Court's teachings and more effectively advances the purposes of Batson.
 The majority cites several cases involving the standard of review applied by the Supreme Court in other contexts. In concentrating on the standard adopted -- deferential or de novo -- the majority fails to capture the consistent theme runningthrough these cases. In each of the habeas cases cited by the majority, the issue was whether the state court's ruling constituted a factual finding "presumed to be correct" on habeas review pursuant to 28 U.S.C. S 2254(d). In both Miller and Thompson v. Keohane, 516 U.S. 99 (1995), the Supreme Court concluded that the state court's ruling was not the type of factual finding that should be insulated from habeas review.
 In Miller, the Court held that the voluntariness of a confession is a legal question, which is reviewed de novo. 474 U.S. at 112. The Court concluded in Thompson that whether a suspect was "in custody" at the time of interrogation presents a mixed question of law and fact qualifying for independent review. 516 U.S. at 112-13. In contrast, in Patton v. Yount, 467 U.S. 1025 (1984), the Court treated a state trial court's evaluation of juror impartiality as a finding of "historical fact" entitled to the statutory presumption of correctness on habeas review. See id. at 1036-37. Thus, taken together, these habeas cases dictate de novo review of the ultimate issue in the first Batson prong, which the majority acknowledges is at least a mixed question of law and fact, as distinct from a purely factual finding that is presumed correct on habeas review.
 Of the other habeas cases cited by the majority, the only one conceivably casting doubt on the applicability of de novo review is Maggio v. Fulford, 462 U.S. 111 (1983), in which the Supreme Court analyzed the state court's ruling concerning competency to stand trial as a finding of fact "fairly supported by the record." Id. at 117 (quoting former 28 U.S.C. S 2254(d)(8)). Four Justices, in three separate opinions, however, pointed out that the Court traditionally has treated the ultimate question of a defendant's competency as a mixed question of law and fact, subject to "full federal review," and that the majority in Maggio neither overruled the prior cases nor offered any explanation for its failure to follow the Court's precedent. See id. at 119 (White, J., Concurring); id. at 120 (Marshall, J., Dissenting) (citing Drope v. Missouri, 420 U.S. 162 (1975), and Pate v. Robinson, 383 U.S. 375 (1966)). Hence, Maggio provides little, if any, support for the clear error standard of review adopted by the majority here.
 Finally, Pullman-Standard v. Swint, 456 U.S. 273 (1982), a Title VII case cited by the majority, is consistent with the distinction being made here between the first and third prongs of the Batson standard. In Swint, the Supreme Court deemed the district court's ruling concerning lack of discriminatory intent a pure question of fact subject to the clearly erroneous standard of Fed. R. Civ. P. 52(a). See id. at 287-88. The district court's decision in Swint, rendered after a full trial, is analogous to the determination made under the third Batson prong. Swint does no more than confirm the deference owed to the trial court's ultimate finding as to whether the defendant proved purposeful discrimination by the prosecutor in jury selection.
 Conclusion
 We should join the Seventh Circuit in adopting de novo review of the Batson prima facie inquiry. De novo review is consistent with our circuit's Title VII jurisprudence and with the Supreme Court's teachings in Batson, Hernandez, Ornelas, and the habeas cases discussed earlier. The two-tier standard preserves meaningful review with respect to one of the most important constitutional rights -- the right to be Judged by a jury chosen free of purposeful discrimination.
 NOTES:
 
 
 [1]
 The three elements of the prima facie case are: (1) proof of membership in a cognizable group and use of peremptory challenges to remove venire members of a cognizable group; (2) the presumption that peremptory challenges permit discrimination by those inclined to discriminate; and (3) a showing that the above facts and "any other relevant circumstances" raise an inference of discrimination. Batson, 476 U.S. at 96; see Powers, 499 U.S. at 402 (defendant and venire member need not be of the same cognizable group). Satisfying the three prima facie factors raises the necessary inference of purposeful discrimination to shift the burden to the other party to provide a neutral explanation for challenging the venire members at issue. Batson, 476 U.S. at 96-97; cf. Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 254 n.7 (1981) (prima facie case in this context "denote[s] the establishment of a legally mandatory, rebuttable presumption").
 
 
 [2]
 The four elements of the Title VII prima facie case are: (i) membership in a protected class; (ii) application and qualification for the job or satis factory performance in the job; (iii) rejection or discharge; and (iv) the employer's continued solicitation of similarly qualified applicants or replacement of the plaintiff with an equally or less qualified person. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), and its progeny.